**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Jason Michael Bankston, | ) | |
| | ) | **ORDER GRANTING DEFENDANTS'** |
| Plaintiff, | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | |
| Michael Chertoff, Secretary Department of | ) | |
| Homeland Security; Joel Gutensohn, | ) | |
| Federal Security Director; Jerry Anderson, | ) | |
| ASFD for Regulatory; Paul Missel, AFSD | ) | |
| for Screening; Lisa Schauer, H/R | ) | |
| Administrative Officer, | ) | |
| | ) | Case No. 1:05-cv-124 |
| Defendants. | ) | |

Before the Court is the Defendants' Motion for Summary Judgment filed on September 1,

2006. The Plaintiff filed a response opposing the motion on October 17, 2006. For the reasons set

forth below, the Defendants' motion is granted.


I.      **BACKGROUND**

The plaintiff, Michael Jason Bankston ("Bankston"), is a former employee of the

Department of Homeland Security. Defendant Michael Chertoff is sued in his official capacity as

Secretary of the Department of Homeland Security. The remaining defendants are employees of

the Department of Homeland Security and were Bankston's supervisors and/or co-workers.

On September 8, 2002, Bankston was appointed to an excepted two-year term position as

the Assistant Federal Security Director for Screening at the Bismarck Municipal Airport. The

principal duties of an Assistant Federal Security Director for Screening are to supervise a staff of

security screeners, manage checkpoint operations, and administer laws, regulations, and policies

pertaining to the Transportation Security Administration's ("TSA") aviation security. The Assistant

Federal Security Director for Screening is directly supervised by the Federal Security Director. During Bankston's tenure at the Bismarck Municipal Airport, Joel Gutensohn ("Gutensohn") was the Federal Security Director and Bankston's direct supervisor from September 8, 2002, to April 10, 2003. The Bismarck Municipal Airport is a "hub" airport, and the Federal Security Director's staff also supervises TSA operations at three "spoke" airports:  Dickinson Theodore Roosevelt Regional Airport, Dickinson, North Dakota; Sloulin Field International Airport, Williston, North Dakota; and Minot International Airport, Minot, North Dakota.

Early in Bankston's employment, Jerry Anderson ("Anderson") was the Scheduling Operations Officer and Bankston's co-worker.  Paul Missel ("Missel") was the Stakeholder/Liaison, a subordinate of Anderson's, and a co-worker of Bankston.  Lisa Schauer ("Shauer") was employed in HR/Personnel and was also a co-worker of Bankston.  Nadine Privratsky ("Privratsky") was the Screening Manager and reported directly to Bankston.

On January 24, 2003, Gutensohn met with the Dickinson Theodore Roosevelt Regional Airport's Supervisory Transportation Security Screener, Julie Kuntz ("Kuntz"), to discuss problems Kuntz was having with TSA personnel in Dickinson.  <u>See</u> Memorandum to Bankston from Gutensohn dated April 8, 2003, (Docket No. 40-13).  Gutensohn directed Bankston to work with Kuntz to implement remedies to resolve the situation.  On February 6, 2003, Site Supervisor for the Dickinson Airport, Steven Palmer ("Palmer") submitted an "Action Plan" to Bankston and Screening Manager Privratsky for Kuntz's training.  <u>See</u> Docket No. 40-13.  On March 27, 2003, Bankston and Privratsky traveled to Dickinson to interview Kuntz and Palmer.  Bankston tape-recorded the interviews.  Bankston asserts that he felt Palmer was part of the problem and was not

in the position to provide unbiased training and review of Kuntz's abilities and workplace performance.  See Docket No. 43.

On April 1, 2003, Gutensohn sent Missel to interview the TSA staff at the Dickinson Airport and to provide an impartial overview of the situation.[1]  In early April 2003, as a result of Missel's observations and his own review of the documentation and tapes, Gutensohn removed Bankston from his position as Assistant Federal Security Director for Screening and reassigned Bankston to the position of Scheduling and Logistics Manager, which involved scheduling staff work hours and maintaining all TSA physical equipment.  Gutensohn's April 8, 2003, memorandum to Bankston, stated, in part, as follows:

> I have reviewed all documentation and tapes relative to this problem.  It is my conclusion that there is fault on all sides.  However, I feel that there was a disturbing lack of overview and direction given by you and [Privratsky] to Steve Palmer and Julie Kuntz during the course of the matter.  In the tape recordings there is an easily perceived difference in the tone of conversation you and [Privratsky] had with [Palmer] vs that with [Kuntz].  Throughout your conversation with [Kuntz] you and [Privratsky] sounded supportive and reassuring.  On the other hand, your conversation with [Palmer] sounded accusatory.  In one instance I felt [Privratsky's] statement of "Do you think that I am incompetent" was without provocation.  Up to that point [Palmer] did not make any statement indicating incompetence on her part.  On two other occasions stoppages in the recording were followed by you reminding [Privratsky] and [Palmer] to remain professional in the conversation.  I am unable to ascertain because of the breaks in the tape exactly what preceded those reminders.  In any event, as the supervisors, you and [Privratsky] are held to a higher standard when dealing with subordinates.

> I feel that between [Palmer's] submissions of his 4 February "Action Plan" and the arrival of [Privratsky'] March 25th letter there was a serious lack of direction and supervision provided the individuals involved in this matter.  You have stated that you did not discuss the Action Plan with [Palmer].  You also indicated in the

---

[1]The record includes an undated memorandum from Anderson to Gutensohn regarding Bankston's performance.  See Docket No. 39-9.  Based on Anderson's conclusion that Bankston "does not possess the knowledge and ability to effectively serve as the Assistant Federal Security Director for Screening at this time" it appears that this memorandum was written prior to April 8, 2003.  Anderson's observations are similar to those of Missel and Gutensohn.

audiotape that you had not read it.  Your failure to read and/or discuss the Action Plan with [Privratsky], [Palmer] and [Kuntz] gave it little chance for success.  An approximate two-month lapse in documented counseling and specific direction at the Dickinson Airport is not acceptable supervision.

During your counseling session with me in January, I instructed you to seek the advice and counsel of staff members Paul Missel, Ken Ness, and Jerry Anderson. [Missel], [Ness] and [Anderson] possess extensive managerial experience and could provide valuable tools for your career development.  I feel that you have resisted seeking their advice and have maintained a do it by yourself attitude.  Your resistance whether unintentional or by design has hindered your managerial development.

I have determined that your actions in this matter require that I move you from AFSD Screening to Scheduling/Maintenance.  Your new duties will include all those of the Scheduling position with the inclusion of maintenance for all TSA equipment i.e., ETDs, Vehicles, Phones, radios, and all Hub and Spoke Airport equipment.  Our AO is currently in the process of drawing up Position Descriptions for all positions in our office.  One will be provided, as it is available.

See Docket No. 40-13.

Bankston asserts that Missel was never his supervisor and should not have been allowed to review his performance.  See Docket No. 43.  Bankston also contends that Missel thought that Bankston was incompetent and that Missel should have his job.  See Docket No. 43.  Bankston admits that he was not "currently up to date on the 'Action Plan'" when questioned by Gutensohn, but contends he did read and discuss the plan with Privratsky.  See Docket No. 43.  Bankston concedes that he viewed the instruction to contact others with management experience as a method for Gutensohn to show that he (Bankston) required assistance from others to complete his job. Bankston was concerned that seeking help would show that he was not competent to do his job.  See Docket No. 43.  However, Bankston asserts that he did seek the assistance of Anderson, Missel, and Ness.  See Docket No. 43.  Bankston asserts that he was reassigned without "gaining authority of TSA Headquarters as the FSD moved [him] from the AFSD for Screening Position and made up a

position of much lower ranking by having [him] placed at a level lower than the position that he was hired as and at a level of the Screening Manager."  See Docket No. 43.

On April 10, 2003,  Missel  was assigned as the Acting Assistant Federal Security Director for Screening and became Bankston's direct supervisor.  On April 22, 2003, Missel met with Bankston and issued him a signed memorandum outlining the expectations of Bankston in his new position.  See Docket No. 40-11.  The memorandum stated, as follows:

> The purpose of this memorandum is solely to let you know my expectations in regard to your performance while reporting to me.  My expectations are:
>
> - Notify me when and if you will be late or not available for duty, meetings or appointments.
> - Inform me when you depart the office for any reason.  (I just need to know your whereabouts if asked).
> - Brief me on major issues or issues that could affect the status of our operations daily.  I do not like to be blind-sided.
> - Coordinate with me prior to sending out written guidance, policy or correspondence to any TSA employee/agency or business related entity. Joe has to see these also.  I will be the conduit to Joe.
> - Complete all taskings by the suspense date; let me know if you need guidance, information or an extension to the completion date.   Most suspense's are not hammered in stone.  I do expect a timely response though, not waiting until the last minute.
> - Answer all correspondence (e-mails, letter, etc.) and telephone calls in a timely manner.  Always respond even if your answers is "I'll get back with you."
> - Do not discuss any personnel/policy & procedure changes, disciplinary actions, or events occurring in the Hub office with any TSA employee unless it is OK'd by the FSD.
> - Always promote TSA in your daily interactions with the public and our own employees in a professional and courteous manner.
> - Do not discuss performance issues with peers.
> - Keep me informed of any problems that you may be having, whether professional or personal.
> - I am open to ideas and new ways of doing things; if you don't like the way I am doing something and have a better way . . . let me know.  No offense will be taken; I just want a good product.

See Docket No. 40-11.  Bankston signed the memorandum acknowledging its receipt.

Bankston contends that at the time he was presented with his duty expectations, he demanded "to see the investigation conducted against him and the results of the investigation that determined that he needed to be removed from his position." See Docket No. 43. Bankston also asserts that the list of expectations "removed [his] ability to defend himself from wrongdoing in the workplace and was not allowed to discuss these requirements with [co-workers]." See Docket No. 43.

On April 24, 2003, Missel requested that each Friday, Bankston provide him with a calender of events for the next week. See Docket No. 40-8. Missel verbally counseled Bankston for his failure to provide his weekly calendar on April 28, May 6, May 12, May, 19, May 27, June 2, and June 11, 2003. See Docket No. 40-8. Between May 6, and June 11, 2003, Missel verbally counseled Bankston for failing to meet the expectations of his positions on four other occasions, regarding Bankston's failure to notify Missel about inquiries into airport equipment, failure to timely order additional phone lines, failure to obtain Material Safety Data Sheets for the materials used at checkpoints, and failure to attend a scheduled meeting. See Docket No. 40-8.

Bankston contends that he was unable to complete the calendar of events on time because the remaining office staff and screening supervisors "were reluctant to speak with [him]." See Docket No. 43. Bankston admits that he was late in providing Missel with the weekly calendars, but contends that he was never informed that he was being counseled nor was he required to sign any form of documentation regarding being counseled.

On June 19, 2003, Missel completed a 60-day Probationary Period Evaluation of Bankston and provided the report to Gutensohn. Missel reported that Bankston consistently failed to meet the expectations of his position by failing to share important operational information, failing to follow up on items unless proceeded, releasing sensitive internal TSA information to airline and airport

personnel, and filing to provide timely schedules to TSA supervisors and screeners. Missel concluded the evaluation with the following:

> [Bankston] is not a team player and his insistence on discussing personal actions/issues is creating an undertone not conducive to a model workplace. It is my strong conviction that Jason Bankston should not be employed by the TSA in a managerial position. His skills, knowledge and professional attitude are not those desired of managers by any organization. I recommend that he be removed as a TSA manager immediately.

See Docket No. 39-8.

Bankston asserts that the "60-Day Probation Period Review Evaluation" was created subsequent to his termination.

> At no time was the Plaintiff made aware that his workplace performance was going to be a "60-Day Probation Period Review Evaluation" nor was the Plaintiff advised either verbally or in writing that he was in fact on a probation period for the new position. Furthermore, the Plaintiff was not informed as to the contents of the review conducted by the Defendant (Missel). In addition, this document has never been placed into the Plaintiff's Official Personnel File (OPF) maintained by TSA Headquarters nor into his Inter-Office Personnel File maintained at the Bismarck TSA office. Plaintiff feels that this document was originated only after the Plaintiff left employment with TSA in order to give the Defendant's (sic) reason for demotion and termination after the Plaintiff had began the EEOC process.

See Docket No. 43. Bankston also asserts that he never released any form of "Sensitive Internal Agency Information" to airline and airport personal. See Docket No. 43. Bankston also denies that there was ever a problem with the timeliness of schedules or adjustments to schedules. Bankston contends that such allegations were made to incriminate him. See Docket No. 43.

Between June 22 and June 29, 2003, Bankston was in Dallas/Ft. Worth, Texas, for training. While there, Bankston failed to return voice messages left by Missel concerning an incident involving a Northwest Airlines pilot. Bankston eventually sent an e-mail response stating that he failed to understand why Missel was upset and that his cell phone was not working. Missel

7

reviewed the cell phone records from Bankston's phone, which revealed that Bankston has placed outgoing calls and received incoming calls on his cell phone while in Dallas.  See Docket Nos. 40-7 & 40-8.

On July 29, 2003, Missel and Gutensohn confronted Bankston about his false statement regarding his cell phone.  Missel provided Bankston copies of his cell phone records which indicated that calls were made and received during his time in Dallas, Bankston responded that the single e-mail should have sufficed.  Bankston had no comment as to why he had told Missel that his cell phone was not working in Dallas.  Missel told him that his lies meant that Missel could no longer trust him.  See Docket No. 40-9.

On August 1, 2003, Gutensohn terminated Bankston's temporary appointment with TSA. See Docket No. 40-5.  After Bankston asked for more information regarding the reasons for his termination, Gutensohn provided Bankston the following information:

> You were terminated because you failed to meet the expectations of your position(s). Your performance as a manager and supervisor were not satisfactory.
>
> Among the instances of unsatisfactory performance on which we based this decision were repeated counseling sessions and reminders to complete work on time and keep you supervisor informed.  You additionally lied to your supervisor and myself about your inability to use your cell phone to call us back while you were attending the SABRE training.  Furthermore, upon your termination from your position at TSA we discovered that you had failed to complete the ETD Periodic Maintenance Training at BIS, ISN and DIK as instructed; has not downloaded and installed a patch to update training data for the ISN training computer; and left SSI material in unmarked boxes and envelopes without properly securing them.

See Docket No. 40-4.

Bankston asserts that the documents regarding his termination were fabricated.

The document from the Plaintiff requesting further information regarding his termination from TSA was not provided to the Defendants upon termination but sent to Secretary, U.S. Department of Homeland Security, Mr. Tom Ridge.  There was

never any form of reason presented to the Plaintiff at the time of termination nor did any of the official paperwork presented to the Plaintiff show "Complainant was terminated because you failed to meet the expectation of your position(s). Your performance as a manager and supervisor were not satisfactory". These documents were never present in the Plaintiff's OPF nor were they presented to the Plaintiff at any time prior to the EEOC process. It is the Plaintiff's belief that these documents were fabricated to allow the Defendants to show just cause for termination of the Plaintiff, and cannot be supported by any other forms of required documentation as per TSA regulations, rules, and policies.

See Docket No. 43.

Bankston asserts that he was never given any progressive discipline and was not informed that he was not meeting expectations. See Docket No. 39-4. Bankston dismisses his alleged failure to keep in contact while traveling to his assertion that there is no TSA requirement for a manager to contact the office every day while they are on travel or leave. See Docket No. 39-4. Bankston also asserts that he did not leave classified material unsecured. See Docket No. 39-4. Bankson contends that his personnel file does not contain any of the documents referred to by Gutensohn. See Docket No. 39-4. Bankston asserts that his disabilities played a part in his termination because they could cause problems for him at any time and because he could not drink alcohol. Bankston contends that it was made clear to him at several staff meetings that he needed to attend "happy hour" to be able to complete his job. Bankston also contends that gender played a part in his termination because Privratsky was treated differently than he was. Bankston asserts that Privratsky filed a sexual harassment complaint against others in the office so they did not dare to take any form of action against her. See Docket No. 39-4.

Bankston was 32 years old at the time he was terminated from employment with the TSA. Bankston claims the following disabilities: Type II Neourocardiogenicsynsope, Menier's disease, hydronephrisis, tinnitus, knee problems, depression, and intercystalsystitus. See Docket No. 40-1.

9

Anderson, Gutensoh, Missel, and Schauer were aware of Bankston's disabilities because Bankston often spoke of his conditions at work.  <u>See</u> Docket Nos. 39-3; 39-5; 39-6; & 39-7.  Bankston acknowledges that most of his co-workers knew of his disabilities through casual conversations.  <u>See</u> Docket No. 39-4.  Bankston also concedes that his "disabilities did not cause an everyday problem with the duties of my position" and noted that on occasion, his conditions would leave him bed-ridden for several hours and up to an entire day.  <u>See</u> Docket No. 39-4.

Prior to August 2003, Anderson, Missel, and Schauer were unaware that Bankston had contacted the EEOC.  <u>See</u> Docket No. 39-3; 39-6; & 39-7.  Gutensohn was also unaware that Bankston had contacted the EEOC prior to his termination in 2003.  <u>See</u> Docket No. 39-5.  After his reassignment from Assistant Federal Security Director for Screening to Scheduling/Logistics Manager, Schauer advised Bankston to speak with a representative in Employee Relations in reference to his questions about the reassignment.  <u>See</u> Docket No. 39-7.  Bankston asserts that he contacted "TSA EEOC for the first time" on April 10, 2003, and that the only co-worker he shared this information with was Audrey Otte.  <u>See</u> Docket No. 39-4.

Bankston's initial contact with an Equal Employment Opportunity Counselor occurred on July 31, 2003.  Bankston alleged discrimination based on age and disability.  <u>See</u> Docket No. 39-2.  Bankson's concerns were not resolved and, on September 22, 2003, he was provided with a "Notice of Final Interview and Rights to File a Formal Complaint."

On October 11, 2003, Bankston filed a formal complaint of employment discrimination with the Department of Homeland Security, Transportation Security Administration, Office of Civil Rights.  Bankston's complaint set forth ten claims:  (1) violation of Veterans Recruitment Act and USERRA, (2) retaliation for filing a complaint (Whistleblower Act), (3) sexual discrimination, (4)

discrimination based on disabilities, (5) age discrimination, (6) failure to provide equal employment opportunity in the workplace, (7) failure to provide a hostile/harassment free workplace, (8) failure to comply with requirements for progressive discipline, (9) failure to comply with established TSA policy and procedure regarding demotion and promotions, and (10) failure to comply with TSA policy regarding hiring of new personnel.  After the Agency's investigation of the complaint, Bankston requested a hearing before an Administrative Law Judge of the Equal Employment Opportunity Commission.

On April 27, 2005, an Administrative Law Judge of the Denver District Office of the Equal Employment Opportunity Commission received the TSA's  "Motion for a Decision Without a Hearing" pursuant to 29 C.F.R. § 1614.109(g).  Bankston failed to respond to the motion.  On June 30, 2005, the Administrative Law Judge issued a decision without a hearing pursuant to 29 C.F.R. § 1614.109(g).  The EEOC construed Bankston's complaint to allege discrimination termination based upon sex (male), disability (Meniere's disease, tinnitus, type II neurocardiogenicsyncope, hydronephrosis, knee problems, depression, intersystalsystitus), and reprisal (prior EEO activity). The EEOC noted that Bankston had alleged seven other claims, including age discrimination. According to the Administrative Law Judge, "The Agency dismissed these additional claims for various reasons.  The age bases was dismissed because Complainant is not in the protected age group of 40 or over."  See Docket No. 44-3.  The Administrative Law Judge concluded that Bankston failed to prove that he was discriminated against as alleged.

> Complainant has failed to establish a prima facie case of discrimination based on sex, disability or reprisal.  Even assuming that Complainant did establish a prima facie case of sex discrimination, disability discrimination or unlawful reprisal for EEO activity the Agency articulated legitimate nondiscriminatory reasons for the actions perceived by Complainant to be discriminatory or retaliatory.  Complainant has not proffered a scintilla of evidence to call into question the credibility of the Agency's

> reasons for termination and thus, has not demonstrated even an inference of pretext which could lead a reasonable trier of fact to find in favor of him because of his sex, disability or in reprisal for his EEO activity.

<u>See</u> Docket No. 44-3.  On August 15, 2005, the Department of Homeland Security issued a final order on Bankston's discrimination complaint, which fully implemented the Administrative Law Judge's decision as the final action in the matter.  <u>See</u> Docket No. 44-2.

Bankston filed this action on December 1, 2005. The complaint sets forth eleven claims:  (1) wrongful termination, (2) hostile and harassing workplace, (3) violation of agency policy and regulation, (4) failure to conduct informal EEOC investigation, (5) failure to conduct required formal EEOC investigation within the mandated deadline, (6) failure to conduct an unbiased or proper formal EEOC investigation, (7) violation of freedom of speech, (8) falsification of official documents pertaining to plaintiff's termination, (9) failing to provide evidence pertaining to the plaintiff's termination, claiming false protective status of the documents/information, (10) retaliation for filing a EEOC complaint, Whistleblower Protection Act, and (11) defamation of character/slander (Negative Work References).  <u>See</u> Docket No. 1-1.  On September 1, 2006, the Defendants filed a motion for summary judgment asserting that all of Bankston's claims fail as a matter of law.  On October 17, 2006, Bankston filed a response asserting that the matter should proceed to a jury trial.

## II.    <u>STANDARD OF REVIEW</u>

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); <u>Graning v. Sherburne County</u>, 172

F.3d 611, 614 (8th Cir. 1999).  A fact is "material" if it might affect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376 (8th Cir. 1996).  The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact.  If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings.  Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial.  Fed.R.Civ.P. 56(e).  A mere trace of evidence supporting the non-movant's position is insufficient.  Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## III.   LEGAL DISCUSSION

The Court is mindful that the complaint of pro se litigants should be liberally construed. See Rowe v. Union Planters Bank of Southeast Missouri, 289 F.3d 533, 535 (8th Cir. 2002). Bankston's complaint asserts several claims which fall into four basic groups:  (1) wrongful termination (presumably due to sex, age, and disability discrimination), (2) retaliation, (3) hostile and harassing work environment, and (4) constitutional violations and tort claims.  The Court will address each in turn.

13

A.    **WRONGFUL TERMINATION**

Bankston appears to allege that his termination was the result of unlawful discrimination. Throughout the pleadings, Bankston references allegations of discrimination based on sex, age, and disability.

1)    **SEX DISCRIMINATION CLAIM**

In order to establish a prima facie case of sex discrimination, a plaintiff must show that he "(1) is member of a protected class; (2) was qualified to perform [his] job; (3) suffered an adverse employment action; and (4) was treated differently than similarly-situated persons of the opposite sex." Tenge v. Phillips Modern Ag Co., 446 F.3d 903, 910 (8th Cir. 2006). If the plaintiff establishes a prima facie case of intentional gender discrimination, the burden then shifts to the defendant to articulate some legitimate non-discriminatory reason for the selection decision. Ottman v. City of Independence, Missouri, 341 F.3d 751, 757 (8th Cir. 2003).

> This presumption places an obligation upon the employer to produce evidence of a legitimate, nondiscriminatory reason for the [employment decision]. If the employer carries this burden, the legal presumption of unlawful discrimination "drops out of the picture."

Stuart v. General Motors Corp., 217 F.3d 621, 634 (8th Cir. 2000).

If the defendant satisfies this burden, then the plaintiff must show that the proffered reason is a pretext for intentional discrimination. Id.

> [A plaintiff] may still prevail if [he] can proffer evidence of pretext and disbelief of the defendant's explanation. Merely disputing [the defendant's] reason is insufficient, however. [A plaintiff] "must show 'both that the reason was false, and that discrimination was the real reason.'"

Stuart v. General Motors Corp., 217 F.3d 621, 634 (8th Cir. 2000). "An employee's attempt to prove pretext or actual discrimination requires more substantial evidence than it takes to make a prima facie case, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." Smith v. Allen Health Systems, Inc., 312 F.3d 827, 834 (8th Cir. 2002). To overcome the proffered reasons and avoid summary judgment, a plaintiff must present evidence that (1) creates a question of material fact as to whether the defendant's proffered reasons are pretextual and (2) creates a reasonable inference that gender was a determinative factor in the adverse employment decision. Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 921 (8th Cir. 2000). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Ottman v. City of Independence, Missouri, 341 F.3d 751, 757 (8th Cir. 2003) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000)).

It is undisputed that Bankston was a member of a protected class, was qualified to perform his job, and suffered an adverse employment action. Bankston's sex discrimination claim hinges on whether he was treated differently than similarly-situated persons of the opposite sex. The Defendants assert that Bankston has failed to establish a prima facie case of sex discrimination because Bankston was not replaced by a woman or singled out for discharge while similarly situated women were retained. The Defendants note that the individuals identified by Bankston as receiving different treatment were his subordinates and that the individual who replaced Bankston as the Assistant Federal Security Director for Screening was a male. Bankston contends that both he and Privratsky were both held accountable for the incident at the Dickinson airport and that it was unfair

that Privratsky was given an opportunity to correct her mistakes when he (Bankston) was relieved of his managerial duties.

Bankston appears to be alleging that sex discrimination was the reason for his reassignment from Assistant Federal Security Director for Screening to that of Scheduling/Logistics Manager. Bankston fails to appreciate that Privratsky, as his subordinate, was not a "similarly-situated person." It is undisputed that at the time Bankston was reassigned he was Privratsky's direct supervisor. Thus, the Court finds that, as to his reassignment, Bankston has failed to set forth a prima facie case of sex discrimination because he has not established that he was treated differently than a similarly-situated person of the opposite sex. The same is true as to Bankston's termination. Bankston has not identified that he was singled out for discharge while similarly situated women were retained. The Court finds that Bankston has failed to set forth a prima facie case of sex discrimination as to his termination because he has not established that he was terminated while similarly situated women were retained. The Court finds that Bankston's sex discrimination claims must be dismissed as a matter of law.

Even if the Court determined that Bankston established a prima facie case of intentional gender discrimination, the Defendants have offered a legitimate non-discriminatory reason for Bankston's reassignment and ultimate termination. The record is replete with evidence that Bankston was not meeting the normal and expected requirements of his position. During the period that Bankston was the Assistant Federal Security Director for Screening, both Anderson and Gutensohn articulated numerous deficiencies in Bankston's performance, including: (1) lack of supervision of subordinates, (2) failure to seek the assistance of staff members with extensive managerial experience, and (3) exhibiting a "do it yourself attitude." See Docket No. 40-13. While

Bankston was employed as the Scheduling/Logistics Manager, his direct supervisor, Paul Missel, documented several deficiencies in Bankston's performance, including (1) failure to provide a weekly calendar, (2) failure to notify Missel about inquiries into airport equipment, (3) failure to timely order additional phone lines, (4) failure to obtain needed materials, (5) failure to attend a scheduled meeting, and (6) failure to keep in contact while attending training. See Docket No. 40-8. In Bankston's 60-day Probationary Period Evaluation, Missel noted that Bankston's "skills, knowledge and professional attitude are not those desired of managers by any organization." See Docket No. 39-8. The Court finds the reasons proffered by the Defendants are legitimate, non-discriminatory reasons for its employment decision and are sufficient at this stage to rebut the presumption of sex discrimination.

The burden then shifts to Bankston to show that the proffered reasons are a pretext for intentional discrimination. Bankston relies primarily on his own unsupported allegations. Bankston contends that the documents relied upon by the Defendants were conjured up purely for the purposes of this litigation and that Anderson and Missel should not have been reviewing his performance as the Assistant Federal Security Director for Screening because they were not his supervisors. Such assertions unsupported by citations to specific pieces of evidence are insufficient to establish a genuine issue of material fact as to whether the Defendants' actions were a pretext for sex discrimination. See Fed. R. Civ. P. 56 ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial"); see also Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir.1999) ("[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might

support the nonmoving party's claim.'") (internal citation omitted); <u>Ragas v. Tenn. Gas Pipeline Co.</u>, 136 F.3d 455, 458 (5th Cir.1998) ("'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'") (internal citation omitted); <u>c.f.</u>, <u>United States v. Dunkel</u>, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").  Although Bankston denies several of the Defendants' proffered reasons, Bankston admits that he was not up to date on the Action Plan for Kuntz and that he failed to provide Missel with a weekly calendar.

Even if the Court were to assume that Bankston's assertions were supported by the evidence, such assertions do not allege that the underlying motivation for the actions taken by the Defendants was to intentionally discriminate against Bankston based on his sex.  There is simply nothing in the record to support the conclusion that the Defendants' actions were a pretext for sex discrimination. Bankston has failed to point to any specific facts which indicate, in any way, that the reassignment and termination were based on anything other than the proffered reasons.  After carefully reviewing the entire record, the Court finds that Bankston has failed to set forth a genuine issue of material fact as to whether the Defendants' actions were a pretext for sex discrimination.  As a result, the Court finds that Bankston's claims of sex discrimination must fail as a matter of law and that the Defendants are entitled to summary judgement as to Bankston's claims of sex discrimination.

2)   **AGE DISCRIMINATION CLAIM**[2]

To make out a prima facie case of age discrimination, a plaintiff must show that he was at least forty years old, suffered an adverse employment action, was meeting his employer's reasonable expectations at the time of the adverse employment action, and was replaced by someone substantially younger.  See Lewis v. St. Cloud State University, No. 06-1129, 2006 WL 3072059 (8th Cir. Oct. 31, 2006).  It is undisputed that Bankston was not at least forty years old at the time of his reassignment or his termination.   Thus, the Court finds Bankston's claims of age discrimination fail as a matter of law.

3)   **DISABILITY DISCRIMINATION CLAIM**

In the absence of direct evidence of discrimination, disability discrimination claims are evaluated under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  See Simpson v. DesMoines Water Works, 425 F.3d 538, (8th Cir. 2005).  First, an employee must make out a prima facie case by showing that "(1) the employee is disabled within the meaning of the ADA; (2) the employee is qualified (with or without reasonable accommodation) to perform the essential functions of a job; and (3) the employee suffered an adverse employment action because of the disability."  Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005).  Once the employee establishes a prima facie case, the employer must proffer a legitimate, nondiscriminatory reason for the adverse employment action. Id.  If the employer puts forth such a reason, the employee has the burden of demonstrating that the

---

[2]Bankston clearly set forth an age discrimination claim before the EEOC.  The Administrative Law Judge dismissed Bankston's age discrimination claim because he was not a member of the protected class.  It is difficult to discern from the complaint whether he intended to pursue an age discrimination claim before this Court. Nevertheless, the Court will liberally construe his compliant to include a claim of age discrimination.

proffered reason is merely a pretext for discrimination.  Id.  To prove pretext, the employee must do more than show that the employment action was ill-advised or unwise, but rather must show that the employer has offered a "phony excuse." Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir. 2005) (citing Hudson v. Chicago Transit Authority, 375 F.3d 552, 561 (7th Cir.2004); Kincaid v. City of Omaha, 378 F.3d 799, 805 (8th Cir.2004))

The ADA defines disability as "(A) a physical mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Ristrom v. Asbestos Workers Local 34 Joint Apprentice Committee, 370 F. 3d 763, 768 (8th Cir. 2004).  "Substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1).  An individual cannot prove disability status by "merely submitting evidence of a medical diagnosis of an impairment." Ristrom v. Asbestos Workers Local 34 Joint Apprentice Committee, 370 F. 3d 763, 768 (8th Cir. 2004) (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184,  198 (2002)).  Instead, the ADA requires individuals seeking the ADA's protection to prove a disability by offering evidence that the extent of the limitation caused by their impairment in term of their own experience is substantial.  Id.

The Defendants assert that Bankston cannot establish that his physical or mental impairments substantially limit one or more of his major life activities.  The Defendants cite to Bankston's own admission that his "disabilities did not cause an everyday problem with the duties of [his] position."

20

See Docket No. 39-4.  Likewise, Gutensohn, Missel, Anderson and Schauer stated that, although they were aware of Bankston's disabilities, they never observed his disabilities negatively impact his performance.  See Docket Nos. 39-3, 39-5, 39-6, and 39-7.  The Defendants conclude that there is no evidence to establish that Bankston's medical conditions  limited his ability to work or to perform any other major life activity.  Bankston contends that the "fact that with the medications that [he] is currently taking, he is able to complete nearly any and all activities within reason in his personal and professional life" should not apply to his status of a disabled employee.  Bankston contends that without the medication and treatment that he receives from the Veterans Administration, he would not be able to complete all of his normal job functions.

Bankston has failed to set forth any medical evidence to support his claims of a disability. The record is devoid of any evidence to establish a limitation caused by such disabilities.   This alone would be sufficient to defeat Bankston's claims.  However, the Defendants appear to concede that Bankston has the medical conditions he claims to have.  The gravamen of the Defendants' argument is that Bankston has failed to establish that his medical conditions rise to the level of substantially limiting one or more of his major life activities.  The Court agrees.  When determining whether an individual has a qualifying disability, the individual's hypothetical unmedicated state does not control, rather the Court looks at the effects of an individual's mitigating measures, which include medication, when deciding whether an individual's impairment substantially limits a major life activity.  See Ristrom v. Asbestos Workers Local 34 Joint Apprentice Committee, 370 F.3d 763, 772 (8th Cir. 2004).  The Court finds that Bankston has failed to establish that his disability substantially limits one or more of his major life activities.  Bankston's own admissions along with the observations of his co-workers that Banktson's medical conditions did not affect his job

performance are unchallenged.  After carefully reviewing the record, the Court finds that Bankston has failed to set forth a prima facie case of disability discrimination and that the Defendants are entitled to summary judgment as a matter of law.

Even if the Court determined that Bankston established a prima facie case of intentional disability discrimination, the Defendants have offered a legitimate non-discriminatory reason for Bankston's reassignment and ultimate termination.  As the Court noted in relation to Bankston's sex discrimination claim, the record is replete with evidence that Bankston was not meeting the normal requirement of his position .  The Court finds the reasons proffered by the Defendants are legitimate, non-discriminatory reasons for its employment decision and are sufficient at this stage to rebut the presumption of disability discrimination.

The burden then shifts to Bankston to show that the proffered reasons are a pretext for intentional discrimination.  As the Court determined in relation to Bankston's sex discrimination claim, there is simply nothing in the record to support the conclusion that the Defendants' actions were a pretext for disability discrimination.  Bankston has failed to point to any specific facts which indicate, in any way, that the reassignment and termination were based on anything other than the proffered reasons.  After carefully reviewing the entire record, the Court finds that Bankston has failed to set forth a genuine issue of material fact as to whether the Defendants' actions were a pretext for disability discrimination.  As a result, the Court finds that Bankston's claims of disability discrimination must also fail as a matter of law and that the Defendants are entitled to summary judgement as to Bankston's claims of disability discrimination.

**B.**     **RETALIATION CLAIMS**

"Title VII makes it unlawful for an employer to discriminate against an employee 'because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this subchapter.'" Bradley v. Windall, 232 F.3d 626, 632 (8th Cir. 2000)(quoting 42 U.S.C. § 2000e-3(a)).

In order to establish a prima facie case of retaliation under Title VII, a plaintiff "must show that [he] filed a charge of discrimination or engaged in some other protected activity, that the defendant took an adverse employment action against [him], and that there was a causal link between the filing of the discrimination charge and the adverse employment action." Kipp v. Missouri Highway and Transportation Commission, 280 F.3d 893, 896 (8th Cir. 2002). To establish causation, a plaintiff must show that the individual(s) making the employment decision must have known about the protected activity. See Robinson v. Potter, 453 F.3d 990, 994 (8th Cir. 2006). "Once this prima facie showing is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." Manning v. Metropolital Life Insurance Company, Inc., 127 F.3d 686, 692 (8th Cir. 1997) "If an employer meets that burden, the presumption of retaliation disappears." Id.  The employee must then show the proffered reason is a pretext for intentional discrimination. Smith v. Allen Health Systems, Inc., 302 F.3d 827, 833 (8th Cir. 2002).

The Defendants asserts that Bankston is unable to set forth a prima facie case of retaliation as to his termination because he has failed to establish that Gutensohn was aware of Bankston's protected activity at the time Bankston was terminated on August 1, 2003. Bankston responds by

asserting that he was retaliated against when Gutensohn threatened him with criminal charges for retaining copies of personnel documents.

As to Bankston's termination, the record establishes that none of the Defendants were aware of Bankston's contact with the EEOC prior to his termination on August 1, 2003.  <u>See</u> Docket No. 39-3; 39-5; 39-6; & 39-7.  While Bankston  asserts that he contacted "EEOC for the first time" on April 10, 2003, he provides no evidence to support this claim and contends that the only co-worker he shared this information with was Audrey Otte.  <u>See</u> Docket No. 39-4.  As to Bankston's assertion that Gutensohn retaliated against him by virtue of the October 31, 2003, letter threatening criminal action, it is undisputed that Bankston was no longer employed by TSA at this time.  Therefore, Bankston cannot establish that this action resulted in an adverse employment action.

The Court finds that Bankston has failed to establish a prima facie case of retaliation. Bankston has failed to establish that the Defendants had knowledge of his EEO activity prior to his termination on August 1, 2003, and/or that the October 31, 2003, letter from Gutensohn resulted in an adverse employment action.  The Court finds there are no genuine issues of material fact as to Bankston's retaliation claims and that the Defendants are entitled to summary judgment on the retaliation claim.

Even if the Court were to determine that Bankston set forth a prima facie case of retaliation, his claim would fail.  Similar to his discrimination claims, the Defendants have set forth legitimate, nondiscriminatory reasons for Bankston's termination.  Bankston has failed to show that these reasons were a pretext for discrimination.  The Court finds, as a matter of law, that the Defendants are entitled to summary judgment as to Bankston's retaliation claim.

### C.  **HOSTILE WORK ENVIRONMENT**

To establish a hostile work environment claim, the plaintiff must establish that: (1) he is a member of a protected class; (2) he was exposed to unwelcome harassment; (3) the harassment was based on a protected characteristic of the plaintiff; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known about the harassing behavior, but failed to take proper action to alleviate it.  Arraleh v. County of Ramsey, 461 F.3d 967, 979 (8th Cir. 2006).  After an exhaustive review of the record, the Court is unable to ascertain upon what protected characteristic Bankston is claiming the harassment was based.  In other words, Bankston has not claimed the alleged harassment was based on a protective characteristic such as age, gender, or disability.  Bankston asserts that he was "bullied" and "mobbed" on a daily basis by the removal of his "access to all facets of his assigned job functions, information that would be deemed imperative to screening operations, information regarding new screening checkpoint construction and configurations, and daily operational information regarding equipment and screening personnel."  While withholding information from an employee may create a difficult workplace environment, it is not actionable as a hostile work environment claim under Title VII. The Court finds, as a matter of law, that the Defendants are entitled to summary judgment as to Bankston's hostile work environment claim.

### D.  **REMAINING CLAIMS**

Bankston's remaining claims include an alleged constitutional violation and alleged torts. As to the First Amendment claim, the United States Supreme Court has held that federal employees may not sue for constitutional violations arising out of their employment relationship; rather the

exclusive redress for such allegations is found in the civil service remedies.  See Premachandra v. United States, 739 F.2d 392, 394 (8th Cir. 1984) (citing Bush v. Lucas, 462 U.S. 367, 390 (1983)(because claims arising out of an employment relationship are governed by comprehensive procedural and substantive statutory provisions giving meaningful remedies against the United States, a non-statutory judicial remedy to supplement that regulatory scheme would be inappropriate)).  In addition, Title VII is an exclusive pre-emptive administrative judicial scheme for the redress of federal employment discrimination.  Brown v. GSA, 425 U.S. 820, 829 (1976).  Bankston may not bring a separate First Amendment claim against the Defendants.  The Court finds that Bankston's First Amendment claim must fail as a matter of law.

As to Bankston's various tort claims,[3] under the Federal Tort Claims Act, a claimant must present his "claim to the appropriate Federal agency" and the agency must make a final decision before the claimant may bring an action against the United States.  28 U.S.C. § 2675(a); Bohac v. Walsh, 386 F.3d 859, 861 (8th Cir. 2004).  Bankston has failed to establish that he presented any of his various tort claims to the appropriate Federal agency.  Without evidence to establish that Bankston has exhausted his administrative remedies as to his alleged tort claims, the Court finds that Bankston's tort claims fail as a matter of law.

---

[3]Bankston alleged claims of violation of agency policy and regulation; failure to conduct informal EEOC investigation; failure to conduct required formal EEOC investigation within the mandated deadline; failure to conduct an unbiased or proper formal EEOC investigation; falsification of official documents pertaining to plaintiff's termination; failing to provide evidence pertaining to the plaintiff's termination, claiming false protective status of the documents/information; and defamation of character/slander.  See Docket No. 1-1.

IV.     **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the Defendants' Motion for Summary Judgment (Docket No. 35) and **ORDERS** that the Plaintiff's claims against the Defendants be dismissed as a matter of law.  The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Dated this 9th day of November, 2006.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court

27